UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNA PEREZ,<br><br>        Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>        Defendant. | Case No.  1:21-cv-01202-TLN-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 15) |

**INTRODUCTION**

Plaintiff Shawna Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.  (Docs. 15, 17, 18.)  Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this suit.

1

supported by substantial evidence in the record and was based upon proper legal standards. Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title XVI Supplemental Security Income on November 4, 2019, alleging that she became disabled on June 20, 2019. AR 182-88.[2] The claim was denied initially on March 23, 2020, and on reconsideration on May 1, 2020. AR 69-82, 83-95. Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Robert Erickson held a hearing on October 27, 2020. AR 32-64. ALJ Erickson issued an order denying benefits on the basis that Plaintiff was not disabled on December 23, 2020. AR 12-31. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 1-6. This appeal followed.

**October 27, 2020 Hearing Testimony**

ALJ Erickson held a hearing on October 27, 2020. AR 32-64. Cheryl Chandler, an impartial vocational expert, also appeared and testified. AR 54-62. Plaintiff's attorney Brenda Aguirre was also present. The ALJ began by confirming Plaintiff's identity, confirming that Ms. Aguirre was Plaintiff's representative, and confirming that Plaintiff waived the right to an in-person hearing. AR 34-36. The ALJ additionally confirmed with Plaintiff's attorney that the medical record and treatment notes in Exhibits 1F through 19F ran from October 2, 2019 through August 21, 2020. AR 38. Plaintiff's attorney said that she had not received a report from Dr. Aggarwal, and the ALJ said that they would determine later whether additional time was necessary to retrieve that record. AR 39. Plaintiff then amended her alleged onset date to July 29, 2019. AR 39-41.

Upon examination by the ALJ, Plaintiff testified that she had not been selling anything she or others made. AR 42. She said that she had a driver's license, that the furthest she was able to drive was from Taft, California to Bakersfield, California, which took approximately 45 minutes. *Id.* Plaintiff testified that she lived with her 14-year-old son, who was in eighth grade in August and September 2019. AR 42-43. She said that her son did not participate in extracurricular activities, but

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

she would drive her son to school. *Id*. Plaintiff further stated that she prepared most of her son's meals but had help. AR 43-44. She said that she prepared hamburgers and hot dogs and would buy hamburger meat that was already formed in patties. AR 44. She stated that she sometimes had difficulty using a knife to cut harder items such as watermelons and would ask someone else to cut it. *Id.* She added that she did not limit the size of watermelons that she bought but could not lift a ten-pound watermelon due to the weakness in her arms and loss of feeling resulting from nerve damage. AR 44-45.

Plaintiff testified that she began losing feeling in her arms a few years prior to the hearing when she had her spinal fusion. AR 45. She said that she had discussed the lack of feeling in her arms with her pain management healthcare providers and surgeon Dr. Rahimifar at Oswell. *Id.* Plaintiff's attorney noted that the report she was hoping to add to the record was a report from California Pain, Central regarding Plaintiff's radiating pain from her neck to the shoulders. AR 45-46. Plaintiff testified that she did not go for walks to get some exercise during the day because she did not have the strength to do that and felt too weak. AR 46. She stated that if she stood for too long, she had to squat down to the ground because she would begin feeling like she was going to pass out. *Id.* In those circumstances, Plaintiff said that she would lose her vision and hearing. *Id.* Plaintiff said that she had not gone to any community events or church services since July 29, 2019, as she had been too sick. AR 46-47. She said that she had her gallbladder removed approximately two years prior to the hearing and suffered from Coccidioidomycosis in approximately 1998. AR 47. She stated that she had not gone to watch a movie in a theater since July 29, 2019, and never used her son's computer. AR 48.

Plaintiff testified that she would mainly spend her days at home, moving back and forth from the bed to the front porch. *Id.* She said that she would drive to the grocery store but would have difficulty walking through the aisles of the grocery store due to weakness and dizziness. AR 48-49. She said that when she was at the grocery store, she did not have trouble reaching items on shelves but would sometimes have difficulty while waiting in line to check out and would lean over on the basket due to her back pain. AR 49.

Upon questioning by her attorney, Plaintiff stated that she experienced neck pain that radiated into her shoulders and arms, and experienced daily numbness or tingling in her hands. AR 50. She

3

said that she did not have pain or swelling in her hands. *Id.* Plaintiff testified that the numbness and tingling did not affect her ability to move her hands and she did not have difficulty in gripping objects. AR 50-51. She said that she experienced back pain that radiated into both legs, and that she experienced numbness or tingling in her leg. AR 51. She stated that she had difficulty standing up and could stand comfortably for approximately three minutes before she became very weak and felt like passing out, which led her to squat down on the ground. *Id.* She said that she could sit by rotating positions every minute throughout the day, including putting her legs up against her chest and turning side-to-side. AR 51-52. Plaintiff testified that she experienced pain in the arch of her back into her tailbone but did not experience headaches or migraines. AR 52. She said that she experienced shoulder pain every day, but the shoulder pain did not make it difficult for her to reach or move her arms. *Id.* Plaintiff said that her pain made it difficult to concentrate and that her pain caused her to leave tasks undone. AR 52-53. She stated that she napped or lay down for 30 minutes once or twice per day. AR 53. She did not recall whether she told her doctors about her need to lay down once or twice per day. AR 53-54.

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") Cheryl Chandler. AR 54-62. Plaintiff's attorney had no objections to the VE's qualifications, and the VE stated that she would advise the ALJ if her testimony differed from the Dictionary of Occupational Titles. AR 54. The ALJ asked the VE hypothetical questions and asked the VE to assume an individual who was the same age and had the same high school education as Plaintiff. AR 54-55. For the first hypothetical, the ALJ asked the VE to assume that the individual could lift or carry 20 pounds occasionally, could lift or carry 10 pounds frequently, could stand or walk about six hours of an eight-hour workday, could sit about six hours of an eight-hour workday, could push or pull consistent with the lifting and carrying restrictions, and could occasionally climb or stoop. AR 55. The VE testified that there would be work available at the unskilled light level, and listed examples that included: Cleaner/Housekeeper (DOT No. 323.687-01, light, unskilled, SVP 2, with 220,000 jobs); Counter Attendant (DOT No. 311.477-014, light, SVP 2, with approximately 25,00 jobs); and Cashier II (DOT No. 211.462-010, light, unskilled, SVP 2, with 574,000 jobs nationally). AR 55-56.

For the second hypothetical, the ALJ asked the VE to consider an individual who could lift or carry 20 pounds occasionally, could lift or carry 10 pounds frequently, could push or pull consistent with the lifting and carrying described, could stand or walk for two hours in an eight-hour workday, could sit approximately six hours of an eight-hour workday, would need the opportunity to sit or stand whenever the normal work breaks occurred, and could occasionally climb, stoop, or balance. AR 56-57. The VE testified that light work described in the first hypothetical would not be available to the second hypothetical individual, but unskilled sedentary work would be available. AR 57. The VE testified that examples of sedentary work included: Election Clerk (DOT No. 205.367-030, sedentary, unskilled, 6,800 jobs nationally); Document Preparer (DOT No. 249.587-018, sedentary, SVP 2, with 19,000 full-time jobs nationally); and Cutter and Paster (DOT No. 249.587-014, clerical work, sedentary, unskilled, with 11,600 jobs nationally). *Id.*

For the third hypothetical, the ALJ asked the VE to consider an individual who could lift or carry 50 pounds occasionally, could lift or carry 25 pounds frequently, could push or pull consistent with the lifting and carrying restrictions, could stand or walk approximately six hours of an eight-hour workday but no more than 60 minutes continuously, could sit for approximately six hours of an eight-hour workday but no more than 60 minutes continuously, would need the opportunity to sit or stand during scheduled work breaks, could occasionally climb, stoop, or balance. AR 58. The VE testified that that individual could find employment but at a reduced rate and requested further clarification. AR 58-59. The ALJ clarified that the hypothetical individual would need to change positions from sitting to standing after either sitting or standing or walking for 60 minutes and would need to change to the other position for at least five minutes before returning to the original position. AR 59. The VE testified that the Cashier II job would still be available but would be reduced by 90 percent because the majority of positions did not allow for a sit/stand option, which would leave 57,000 positions remaining. AR 59. The VE stated that the previously cited positions did not have the flexibility of a sit/stand option, but stated that other examples of remaining jobs would be Storage Facility Rental Clerk (DOT No. 295.367-026, light, SVP 2, reduced by 50 percent for the sit/stand option leaving 32,000 positions) and Courier (DOT No. 230.663-010, light, SVP 2, no erosion from a sit/stand option, with 26,000 positions in the general classification). AR 60.

For the fourth hypothetical, the ALJ asked the VE to consider an individual who could lift and carry 10 pounds occasionally, could frequently lift and carry one to nine pounds, could stand or walk for two hours of an eight-hour workday, could sit for six hours of an eight-hour workday, could never climb ladders, ropes, or scaffolding, could occasionally climb ramps or stairs, could stand for only 30 minutes continuously, and could occasionally reach above the shoulders and occasionally do gross or fine manipulation with the bilateral upper extremities. *Id.* The VE testified that there would be no employment for that hypothetical individual. AR 61. The VE said that, based upon his experience in vocational rehabilitation, the restricted light or sedentary unskilled work and occasional fine manipulation and gross manipulation precluded employment. *Id.*

Plaintiff's attorney then asked the VE to consider a hypothetical individual the same age, education, and vocational background of Plaintiff who would be off-task 15 percent of the workday. AR 61-62. The VE testified that the individual would not be able to sustain employment based upon his training, education, and experience. AR 62. Plaintiff's attorney then asked the VE to consider a hypothetical individual who would need to miss two or more days per month consistently. *Id.* The VE stated that the individual would not be able to sustain employment based upon his experience. *Id.*

The ALJ then asked whether any treating or other doctors described Plaintiff as needing to miss days from work, and Plaintiff's attorney said that there was no treating source statement that said Plaintiff would need to miss workdays. *Id.* The ALJ then stated that he would leave the record open for 15 days to obtain the records of Dr. Aggarwal. AR 63.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-31. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of July 29, 2019. AR 17. The ALJ identified the following severe impairments: degenerative disc disease, status post fusion, with chronic pain; degenerative joint disease, cervical spine; degenerative

1   joint disease, bilateral shoulders; recurrent hernia; and hypertension. *Id.* The ALJ also noted that
2   Plaintiff suffered from esophageal stenosis; basal cell carcinoma right central eyebrow; asthma, mild
3   without complications acute sinusitis; and headaches, but that these impairments did not significantly
4   limit her ability to perform basic work activities and were therefore nonsevere. AR 17-19. The ALJ
5   further determined that Plaintiff did not have an impairment or combination of impairments that met
6   or medically equaled any of the listed impairments. AR 19.

7   Based on a review of the entire record, the ALJ found that Plaintiff retained the residual
8   functional capacity ("RFC") to perform light work except that Plaintiff could lift or carry 20 pounds
9   occasionally, could lift or carry 10 pounds frequently, could push or pull consistently with the lifting
10  and carrying limitations, could stand or walk approximately two hours of an eight-hour workday,
11  could sit for approximately six hours of an eight-hour workday, would need to have an opportunity to
12  sit or stand "whenever the normal workplace occurred," and could occasionally climb, stoop, or
13  balance. AR 19-24. The ALJ considered "all symptoms and the extent to which these symptoms can
14  reasonably be accepted as consistent with the objective medical evidence and other evidence," as well
15  as "medical opinion(s) and prior administrative medical finding(s)." *Id.*

16  The ALJ found that Plaintiff did not have past relevant work, was defined as a younger
17  individual on the application date, had at least a high school education, and that transferability of job
18  skills was not an issue because Plaintiff did not have past relevant work. AR 25. Given Plaintiff's
19  age, education, work experience, and RFC, the ALJ found that there were jobs that existed in
20  significant numbers in the national economy that Plaintiff could perform. AR 25-26. The ALJ noted
21  that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included:
22  (1) Election Clerk (DOT No. 205.367-030, light, unskilled, SVP 2, with 6,800 positions in the national
23  economy); (2) Document Preparer (DOT No. 249.587-018, light, unskilled, SVP 2, with 19,000
24  positions in the national economy); (3) Cutter/Paster (DOT No. 249.587-014, light, unskilled, SVP 2,
25  with 11,600 positions in the national economy). *Id.* The ALJ therefore concluded that Plaintiff had
26  not been disabled since the application date of July 29, 2019. AR 26.
27      ///
28      ///

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[3]

Plaintiff first argues that the ALJ failed to consider whether Plaintiff's impairments met a listed impairment. (Doc. 15 at 5-8, Doc. 18 at 2-3.) Plaintiff next argues that the appointment of Andrew Saul violated the separation of powers and led to a constitutionally defective decision. (Doc. 15 at 9-11, Doc. 18 at 4-9.)

**A.  Listing**

Plaintiff contends that the ALJ failed to consider whether Plaintiff's hiatal hernia constituted a digestive disorder that caused her low body weight under listing 5.08. (Doc. 15 at 5-8, Doc. 18 at 2-3.) Defendant responds that the Court should affirm because Plaintiff's hiatal hernia did not constitute a digestive disorder; Plaintiff did not have a hiatal hernia during the relevant period following hiatal hernia surgery; and Plaintiff has not demonstrated that the hernia caused her low weight. (Doc. 17 at 17-22.) In her reply brief, Plaintiff argues that Plaintiff's burden of proof does not absolve the ALJ's failure to consider the possibility that Plaintiff's hernias and low weight might be consistent with a listed impairment. (Doc. 18 at 2.)

At Step Three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in [20 C.F.R. part 404, subpart P, appendix 1]." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Id*. (citing 20 C.F.R. § 404.1525). If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. *Id*. (citing 20 C.F.R. § 404.1520(d)).

A claimant bears the burden of proving that his or her impairments satisfy all the criteria of a particular listing. *Id*. "For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). If a claimant's impairment or combination of impairments meets or exceeds a "listing," no

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

specific finding is necessary as to the claimant's ability to perform his or her past relevant work or any other jobs.  20 C.F.R. § 404.1520(d).

The Ninth Circuit has held that, "in determining whether a claimant equals a listing under Step Three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  However, in *Lewis v. Apfel*, the Ninth Circuit examined a case in which the ALJ "did not discuss the combined effects of [claimant]'s impairments, or compare them to any listing" and noted that "[u]nlike the claimants in *Lester* and *Marcia*, however, [plaintiff] has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).  There, the Ninth Circuit determined that the ALJ did not err in finding that the plaintiff's conditions did not equal a listed impairment and noted that the holding in *Marcia* "simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.' " *Id*. at 513-514.  "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff contends that the ALJ failed to consider that she met the requirements of Listing 5.08. (Doc. 15 at 5-8, Doc. 18 at 2-3.)  At the time of Plaintiff's application, Listing 5.08 required: "Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6–month period."  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 5.08 (later revised to BMI calculated "within a consecutive 12–month period.")  In defining which impairments were considered digestive disorders, the relevant statute at the time stated: "Disorders of the digestive system include gastrointestinal hemorrhage, hepatic (liver) dysfunction, inflammatory bowel disease, short bowel syndrome, and malnutrition. They may also lead to complications, such as obstruction, or be accompanied by manifestations in other body systems." 20 C.F.R. § Pt. 404, Subpt. P, App. 1§ 5.00(B).

   Plaintiff does not demonstrate that the weight loss was caused by a digestive disorder.  Plaintiff cites evidence demonstrating that her BMI was below 17.50 during 2019 and 2020 and points to the ALJ's discussion of Plaintiff's recurrent hernia as a severe impairment.  *See, e.g.,* AR 23 (ALJ discussing medical record of April 2018 hiatal hernia diagnosis, August 2019 recurrent hernia diagnosis, and November 2019 report peri-umbilical incisional hernia); 286-87 (June 2019 report noting Plaintiff "presents with symptoms of generally feeling very I unwell and having had weight loss, also hair growth 011 the chin and l face and has had number of other medical problems going back in j time," but not connecting these issues to hernia and noting that physical examination revealed cervical fusion scar in the anterior neck but the rest "of the systemic examination is essentially normal"); 539 (November 19, 2019 report noting BMI of 16.01); 874 (September 25, 2020 report noting BMI of 16.12).  However, Plaintiff does not demonstrate, and the Court cannot conclude from this record, that Plaintiff's recurrent hernia caused Plaintiff's weight loss.  *See Sullivan*, 493 U.S. at 530 (holding that a claimant must "meet *all* of the specified medical criteria" to match a listing and that an "impairment that manifests only some of those criteria, no matter how severely, does not qualify.").  Plaintiff's briefing attempts to connect the hiatal hernia and recurrent hernia Plaintiff experienced in 2018 and 2019 to Plaintiff's 2019 weight loss and claims that Plaintiff's "weight loss was linked to her severe digestive disorder" based upon the ALJ's summary of hiatal hernias, but Plaintiff does not point to reports or other evidence showing the hernias caused Plaintiff's weight loss.  (Doc. 15 at 8.)  Because Plaintiff did not show that her weight loss was *due to* a digestive disorder, Plaintiff did not sufficiently establish a listing equivalence, and the ALJ did not err in not discussing or presuming Plaintiff met the requirements of Listing 5.08.

   Plaintiff further asserts that "the ALJ has already conclusively decided that Ms. Perez's recurrent hernias significantly impacted her ability to work during the relevant time period; any allegation that Ms. Perez did not prove that this impairment impacted her working ability are without merit."  (Doc. 18 at 2.)  This confuses the ALJ's finding of the severe recurrent hernia impairment with Plaintiff's burden of showing that she met all elements of Listing 5.08.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 5.08.  Even though the ALJ found that a recurrent hernia was a severe impairment, Plaintiff did not show that the hernia or other digestive disorder caused her weight loss.  Accordingly,

Plaintiff's argument that the ALJ erred by not considering Listing 5.08 fails. *Sullivan*, 493 U.S. at 530.

### B. Constitutional Argument

Plaintiff next argues that the appointment of Commissioner Andrew Saul, the Commissioner at the time her case was decided by the ALJ and the Appeals Council, was unconstitutional because he was a single head of the agency, served for a longer term than the President, and was removable from the position for cause under 42 U.S.C. § 902(a)(3). (Doc. 15 at 9-13, Doc. 18 at 4-9.) Plaintiff asserts that the delegation of authority to the Appeals Council was constitutionally defective and asserts that the ALJ and Appeals Council judges decided this case under regulations and policies promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules. (Doc. 15 at 9.)

Recent Ninth Circuit caselaw is dispositive of this issue. In *Kaufmann v. Kijakazi*, which was decided after this matter was briefed, the Ninth Circuit held that the removal provision of § 902(a)(3) "violates separation of powers principles." *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022). However, the Ninth Circuit found the removal provision severable from the remainder of the statute and held that a "party challenging an agency's past actions must instead show how the unconstitutional removal provision actually harmed the party—for example, if the President would have removed the agency's head but for the provision or, alternatively, if the agency's head 'might have altered his behavior in a way that would have benefited' the party." *Id.* (citing *Collins v. Yellen*, 594 U.S. 220, 260 (2021)). In *Kaufman*, the Ninth Circuit noted that a claimant may potentially show harm by demonstrating that the "President took an interest in her claim or that the Commissioner directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority," but rejected the claimant's generalized argument that the removal provision "affected the 'expected value of Claimant's claim because the Commissioner theoretically could act in more ways than he could have without the removal restriction." *Id.* at 850.

Plaintiff's motion does not allege a particularized harm to Plaintiff, instead arguing that the Appeals Council judges and ALJ were more broadly tainted by a lack of lawful authority to adjudicate the claim. (Doc. 15 at 9-11.) Plaintiff's reply asserts that Plaintiff suffered two specific injuries beyond a denial of benefits – that Plaintiff did not receive a constitutionally valid adjudication process

12

from the Social Security Administration's Appeals Council to which she was entitled, and that Plaintiff did not receive the constitutionally valid determination by the Appeals Council to which she was entitled. (Doc. 18 at 5.) Plaintiff also contends that the fact that Commissioner Saul remained in his position "only due to a constitutionally invalid statutory provision" demonstrates a "direct causal nexus between the unconstitutional provision at issue and the specific injuries suffered by the claimant with respect to the Appeals Council's actions." (*Id.* at 6-7.)

However, these arguments are not specific to Plaintiff's claim and therefore do not show that Plaintiff suffered actual harm as contemplated by the Ninth Circuit in *Kaufmann*. *See Sexton v. Comm'r of Soc. Sec.*, No. 1:21-cv-00379-EPG, 2022 WL 1471083, at *7 (E.D. Cal. May 10, 2022) (where plaintiff contended that "she suffered was denial of a constitutionally valid adjudication process and decision… such argument is not specific to Plaintiff and does not show that the President took an interest in her claim or directed the Appeals Council to decide her case in a particular way."); *Tyson v. Kijakazi*, No. 1:21-cv-00688-BAM, 2023 WL 2313192, at *6 (E.D. Cal. Mar. 1, 2023) ("Here, Plaintiff's argument appears to be that the harm she suffered was denial of a valid administrative adjudicatory process… This is not sufficient to demonstrate particularized harm to Plaintiff."). Because Plaintiff has not shown actual harm, her argument fails. The constitutionality of the removal provision therefore does not provide a basis for remand in this matter.

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Martin O'Malley, Acting Commissioner of Social Security, and against Plaintiff Shawna Perez.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being

served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 1, 2024**                   /s/ Barbara A. McAuliffe
                                              UNITED STATES MAGISTRATE JUDGE